UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
_____

No. 22-1878
_____
_____

UNITED STATES,
Appellee,

v.

GARY E. LEACH,
Defendant-Appellant.
_____

ON APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
_____

REPLY BRIEF OF DEFENDANT-APPELLANT
GARY E. LEACH
_____

Christine DeMaso
Assistant Federal Public Defender
Federal Public Defender Office
District of Massachusetts
51 Sleeper Street, 5th Floor
Boston, MA 02210
(617) 223-8061
Identification No.: 1168061

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES.................................................................iii

ARGUMENT......................................................................................1

   I.   Mr. Leach's sentence is procedurally and substantively
      unreasonable (Reply to G.Br. 7-32)............................................1

     A.  Standard of review..................................................................1

     B.  The court's failure to give the parties notice of its intention to
        impose an upward variance unfairly surprised Mr. Leach
        (Reply to G.Br. 17-25)............................................................2

     C.  The district court's explanation was insufficient to justify the
        above-guidelines sentence (Reply to G.Br. 25-30). ...........................11

     D.  The sentence is substantively unreasonable
        (Reply to G.Br.   30-32).........................................................19

  II.  The district court erred in imposing a condition of supervised
      release that prohibits Mr. Leach from working and volunteering in
      settings that might cause direct contact with minors without prior
      approval. The record does not support this overly broad condition
      (Reply to G.Br. 32-40)..............................................................22

     A.  Standard of review ...............................................................22

B.  The court imposed this overly broad condition without sufficient explanation or justification. The record did not support its imposition........................................................................................24

CONCLUSION .........................................................................................28

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ................................29

CERTIFICATE OF SERVICE ..................................................................30

# TABLE OF AUTHORITIES

**Page**

**Cases**

*United States v. Ackell*,
　　907 F.3d 67 (1st Cir. 2018) ..................................................14, 15, 20, 21, 22

*United States v. Alvarez-Núñez*,
　　828 F.3d 52 (1st Cir. 2016) ..........................................................................14

*United States v. Cain*,
　　779 F. App'x 6 (1st Cir. 2019) (unpublished) ..........................................17

*United States v. Cardozo*,
　　68 F.4th 725 (1st Cir. 2023) ..........................................................................16

*United States v. Díaz-Villafañe*,
　　874 F.2d 43 (1st Cir. 1989) ........................................................................4, 5

*United States v. Fernandez-Cabrera*,
　　625 F.3d 48 (1st Cir. 2010) ............................................................................5

*United States v. Fey,*
　　834 F.3d 1 (1st Cir. 2016) ......................................................................27, 28

*United States v. Hinkel*,
　　837 F.3d 111 (1st Cir. 2016) ..................................................................26, 27

*United States v. Mangual-Garcia*,
　　505 F.3d 1 (1st Cir. 2007) ............................................................................12

*United States v. Mathur*,
　　624 F.3d 498 (1st Cir. 2010) ..........................................................................4

*United States v. Medina-Villegas*,
　　700 F.3d 580 (1st Cir. 2012) ........................................................................12

*United States v. Ramos*,
763 F.3d 45 (1st Cir. 2014) ..........................................................................27

*United States v. Rivera-Berríos*,
968 F.3d 130 (1st Cir. 2020) ..........................................................4, 6, 8, 18

*United States v. Ruiz-Huertas*,
792 F.3d 223 (1st Cir. 2015) ..................................................................11, 12

*United States v. Sayer*,
748 F.3d 425 (1st Cir. 2014) ..................................................................16, 17

*United States v. Vega-Santiago*
519 F.3d 1 (1st Cir. 2008) (en banc) ..........................................................13

## Rules and Guidelines

Fed. R. Crim. P. 32 ........................................................................................8

U.S.S.G. §2A6.2 ............................................................................................8

## Other

U.S. Sentencing Commission, *Amendment to the Sentencing Guidelines*
(August 31, 2023), available at
www.ussc.gov/sites/default/files/pdf/amendment-process/reader-
friendly-amendments/202308_RF-retro.pdf ........................................11

U.S. Sentencing Commission, *Amendments to the Sentencing Guidelines* (April
27, 2023), available at
www.ussc.gov/sites/default/files/pdf/amendment-process/reader-
friendly-amendments/202305_RF.pdf ...................................................11

# ARGUMENT

## I.     Mr. Leach's sentence is procedurally and substantively unreasonable (Reply to G.Br. 7-32).[1]

### A.     Standard of review.

Mr. Leach's sentence is procedurally and substantively unreasonable because: 1) the court's imposition of an above-guidelines sentence without notice unfairly surprised him; 2) the court did not sufficiently explain the above-guidelines sentence; and 3) the above-guidelines sentence was substantively unreasonable. *See* Br. 12-36. The government's brief delineates two possible standards of review for these claims: abuse of discretion for preserved claims and plain error for unpreserved ones. G.Br. 16. It argues that "Leach did not preserve his challenge to the sufficiency of the district court's explanation for the variance," and that plain-error review applies to the second claim. G.Br. 25. In contrast, the government does not argue that Mr. Leach failed to preserve the unfair-surprise claim or the substantive-unreasonableness argument. Nor does it argue that

---

[1] Citations are as follows: JA refers to the Joint Appendix; SA to the Sealed Appendix, Add. to the Addendum, DE to a district court docket entry, Br. to Mr. Leach's opening brief, and G.Br. to the government's brief.

plain-error review applies to these claims. This is an implicit concession that the abuse-of-discretion standard applies to claims one and three.[2]

The claim of insufficient explanation should also be reviewed for abuse of discretion. Mr. Leach objected to the unexpected upward variance and advocated for the shorter sentence. *See* Br. 12-14. However, Mr. Leach prevails even under plain-error review. *See* Br. 12-14, 30-31.

**B.     The court's failure to give the parties notice of its intention to impose an upward variance unfairly surprised Mr. Leach (Reply to G.Br. 17-25).**

The government argues that Mr. Leach was not unfairly surprised by the upward variance because he was aware of the four factors the court discussed and had "ample incentive and opportunity to address each of these issues before the court imposed the variance." G.Br. 17-24. None of the cases the government cites involve the circumstances that unfairly surprised Mr. Leach. At the first sentencing hearing, the court acknowledged having reviewed the PSR and the parties' sentencing submissions, heard from the victim, and listened to the parties' presentations about the appropriate sentence. JA 109-132. The government

---

[2] Even if this Court applies plain-error review to these claims, Mr. Leach can prevail under this more exacting standard. *See* Br.12-14, 18-19, 30-31.

argued for a sentence close to the low end of the guidelines range. JA 119-

26. Mr. Leach argued for a downward variance. JA 126-32. The court

expressed concerns regarding the destruction of images Mr. Leach had

acquired. JA 133-51. It did not indicate that it believed that the guidelines

range did not adequately address the sentencing factors. *Id.* Nor did it

express any such concern in the three months between the first and second

sentencing hearings. In this context, the court's announcement at the

second sentencing hearing that it would vary upward based on the

inadequacy of the guidelines range was unfair surprise.

Mr. Leach had no opportunity to confront the court's mistaken belief

that his case fell outside the mine-run of cyberstalking and threats cases.

Given the government's decision to ask for a within-guidelines sentence

and its willingness to enter a plea agreement that let Mr. Leach ask for a

below-guidelines sentence, he focused on convincing the court to vary

downward. He was unaware of the court's perception that his case was

worse than the norm, and he had no incentive or opportunity to confront it.

Mr. Leach objected to the above-guideline sentence but did not

request a continuance. Add. 26-27; *see also* Br. 13-14, 18-19. The government

does not argue that Mr. Leach's failure to request a continuance calls for

plain-error review; instead, it argues that this omission shows that he was not unfairly surprised. G.Br. 19. Just as his failure to request a continuance does not require plain-error review, it does not defeat his argument on the merits. *See* Br. 13-14, 18-19. Counsel objected to the unnoticed upward variance, citing Rule 32(h) and due process concerns. Add. 26-27. The court said nothing in response and moved on to discussing self-reporting. *Id.* Counsel's failure to request a continuance does not mean that counsel was not surprised. It can just as easily be understood as counsel having been so surprised as to not be able to immediately formulate a complete response to the unexpected situation. The objection gave the court sufficient notice that the variance caused unfair surprise. *See United States v. Rivera-Berríos*, 968 F.3d 130, 134 (1st Cir. 2020).

The cases the government cites in support of its argument are distinguishable. *See* G.Br. 19. In *United States v. Mathur*, the district court offered a continuance based on a *Brady* violation, but counsel declined. 624 F.3d 498, 502, 506 (1st Cir. 2010). This Court held that Mr. Mathur could not show surprise where counsel rejected an offered continuance. *Id.* at 506-08. The court did not offer Mr. Leach a continuance or respond to his objection during the hearing. Add. 26-27. In *United States v. Díaz-Villafañe*, the

4

government did not follow a local rule that required it to give notice of witnesses at sentencing. 874 F.2d 43, 45 (1st Cir. 1989). However, the government called the witnesses to resolve defendant's objections to the PSR, indicating that counsel was aware of the issues. *Id*. at 46-47. Further, counsel cross-examined the witnesses thoroughly and was not prejudiced by any purported surprise. *Id.* There are no indications in the record that Mr. Leach was aware of the upward variance before the court imposed it. In *United States v. Fernandez-Cabrera*, the court gave a mid-guidelines sentence that was above the parties' recommendation. 625 F.3d 48, 50-51 (1st Cir. 2010) There was no contemporaneous objection. *Id*. This Court held that no notice was required for a within-guidelines sentence. *Id*. at 52-53. Unlike in these cases, Mr. Leach objected to the above-guidelines sentence and made it clear that his objection was rooted in concerns about unfair surprise. The failure to request a continuance does not alter the standard of review or suggest that there was no unfair surprise.

The government argues that Mr. Leach had an opportunity to address each of the court's explanatory factors because the government and Jane Doe A discussed them. G.Br. 20-25. To the extent the government discussed these factors, it is important to note that it argued that they

5

merited a lower guidelines sentence, not an upward variance. The government correctly notes that the parties' recommendations do not bind the court. G.Br. 29-30. However, the parties' recommendations are relevant. The government's recommendation is an indication of what a mine-run case looks like. *Cf. Rivera-Berríos*, 968 F.3d at 135 ("[T]he government — in its presentation at sentencing — identified no aggravating circumstances. Indeed, by recommending the imposition of a sentence at the low end of the guideline sentencing range, the government implicitly conceded the absence of any such exacerbation."). The fact that the entity responsible for charging and prosecuting cyberstalking cases argued that this case merits a sentence near the low-end of the guidelines suggests that it is within the mine-run.

The parties' recommendations are also evidence that counsel was surprised by the upward variance. Counsel knew that the government believed this was a mine-run case and had entered into a plea agreement permitting Mr. Leach to advocate for a below-guidelines sentence. These circumstances indicate that counsel was unfairly surprised by and did not have a sufficient opportunity to address the court's conclusion that this case fell outside the mine-run. The parties were aware of the case-related

6

facts underlying the court's explanation. *See* Br. 18. However, the court abused its discretion when it failed to give counsel an opportunity to confront its mistaken belief that this case was outside the mine-run.

In arguing that Mr. Leach was not unfairly surprised, the government makes some statements that merit specific commentary. The court's first factor supporting an upward variance was the fact that Jane Doe A suffered sexual harm. Add. 16-18. The government states that "[t]he guidelines contemplate more severe sentences in cases involving physical harm," but "assume that such cases will involve physical contact." G.Br. 21. Neither the district court nor the parties cited this enhancement below or suggested that it should have applied. The government argues that Mr. Leach was aware of this factor because he did not mention the video calls in his sentencing memorandum. G.Br. 22. This argument misapprehends the purpose of a sentencing memorandum. Mr. Leach accepted responsibility for his actions, and the memorandum was meant to present him and his background to the court in a way that supported a below-guidelines sentence. The facts of the case were detailed in the PSR and the government's memorandum. SA 4-6; JA 95-98, 104-06. There was no reason for Mr. Leach to repeat them in his sentencing memorandum. *See* SA 31

(Mr. Leach's sentencing memorandum citing PSR for detailed explanation of his "abhorrent" behavior).

The government states that Mr. Leach was aware of the court's second reason for varying—the duration of the conduct—because the guidelines commentary suggests that "an upward departure may be warranted if the defendant stalked the victim on many occasions over a prolonged period of time." U.S.S.G. 2A6.2 (App. Note 5); *see* G.Br. 22. Again, although the court is not bound by the parties' conclusions, it is notable that neither the parties nor Probation thought that this commentary applied to Mr. Leach. *Cf. Rivera-Berríos*, 968 F.3d at 135. The decision not to apply this commentary indicates that Mr. Leach's case was within the mine-run and that an upward variance on these grounds would create unfair surprise.[3]

The government argues that Mr. Leach was aware of the court's third factor—power dynamics—because his sentencing memorandum argued that his actions resulted from low self-esteem and sexual inexperience. G.Br. 23-24. Mr. Leach's sentencing memorandum discussed his mental

---

[3] Notably, had the court imposed a departure on these grounds, Rule 32(h) would have required it to give the parties notice. Fed.R.Crim.P. 32(h).

health evaluation, treatment, and prognosis. SA 24-36. He provided this information to explain who he is and to justify a below-guidelines sentence. He did not present this information to argue that the power dynamics of his case did not require an upward variance.

The government states that Mr. Leach "raised the possibility that Jane Doe A was an experienced sexual performer." G.Br. 23; *see also* G.Br. 12. The language "experienced sexual performer" comes from the government's argument, not Mr. Leach's. JA 124. Mr. Leach explained the context in which his conduct occurred. SA 30-31. He did not characterize Jane Doe A as "an experienced sexual performer," and he acknowledged that little had been disclosed about her circumstances. *Id.* This offense began when Jane Doe A sent Mr. Leach a direct message after seeing a comment he left on an Instagram post containing a hashtag meant to identify individuals who are willing to pay for sexual images or interactions. JA 20. The context Mr. Leach provided was relevant to understanding this side of social media.

The government argues that the court may not have known "prior to the second hearing that it would impose a variance." G.Br. 24. This conclusion is not supported by the record. The court explained that the

9

variance was based on information and documents "readily available to the parties months before imposition of the variance." JA 12 (DE 81). The court acknowledged reviewing the PSR and sentencing submissions at the outset of the first hearing and heard from the victim and the parties at that time. JA 109-32. No new information was presented at the second hearing that could have persuaded the court to spontaneously impose an upward variance; its decision was based on the information presented at and before the first hearing. Even assuming that the court was still "open to persuasion" at the second hearing, that is all the more reason that it should have notified the parties that it was considering an upward variance. Had the court given notice, the parties would have had the opportunity to directly confront its mistaken belief that this case fell outside the mine-run. This Court need not issue a sweeping ruling about when a district court is required to give notice. In this case, where the court was considering an upward variance and had three months in which to give the parties notice, its failure to do so caused unfair surprise.

**C.    The district court's explanation was insufficient to justify the above-guidelines sentence (Reply to G.Br. 25-30).[4]**

The government argues that Mr. Leach's claim that the court's explanation was insufficient should be reviewed for plain error and that he cannot meet this standard. G.Br. 25-26. Even accepting that this standard applies, Mr. Leach can meet it. *See* Br. 12-14, 19-31. The government asserts that to prevail under the third and fourth prongs of the plain-error test, he must show a "reasonable probability that further explication by the court would have altered its decision to vary." G.Br. 26 (citing *United States v. Ruiz-Huertas*, 792 F.3d 223, 227 (1st Cir. 2015)). This is not a proper

---

[4] Although it does not directly impact this appeal, Mr. Leach notes that the Guidelines range calculated by the district court will likely be impacted by the recent, retroactive Guidelines amendments. The Commission adopted a downward adjustment for some offenders with zero criminal history points. U.S. Sentencing Commission, *Amendment to the Sentencing Guidelines* (August 31, 2023), available at www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202308_RF-retro.pdf. This adjustment should apply to Mr. Leach and would decrease his offense level by 2 levels, making his offense level 17 and his guidelines range 24-30 months. U.S. Sentencing Commission, *Amendments to the Sentencing Guidelines*, at 87-88 (April 27, 2023), available at www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf This adjustment has been made retroactive, but this amendment does not become effective until November 1, 2023, and reductions cannot take effect before February 1, 2024. *Amendment to the Sentencing Guidelines* at 2-3. Mr. Leach cannot yet seek relief under this provision.

recitation of the standard. *Ruiz-Huertas* quotes part of the general plain-error standard: "the defendant must show 'a reasonable probability that, but for the error, the district court would have imposed a different, more favorable sentence.'" 792 F.3d at 227 (quoting *United States v. Medina-Villegas*, 700 F.3d 580, 583 (1st Cir. 2012)). *Medina-Villegas* explains how this standard applies to a claim of inadequate explanation: "'[T]o establish a reasonable probability of a different sentence…the appellant has the burden of identifying specific facts that convince us that the district court considered a significant improper factor, failed to consider a significant proper factor, or made a significant error in balancing the factors.'" 700 F.3d at 583 (quoting *United States v. Mangual-Garcia*, 505 F.3d 1, 16 (1st Cir. 2007)). Mr. Leach has shown that the factors the court cited in support of its above-guidelines sentence were accounted for by the guidelines, not supported by the record, and/or not specific to Mr. Leach, resulting in a significant error in balancing the factors. *See* Br. 19-31.

Mr. Leach's opening brief cited First Circuit cyberstalking cases to illustrate that his conduct fell firmly within the mine-run of such cases and that the court's upward variance was not sufficiently justified. Br. 19-31; *see also* Br. 31-35. The government counters that "[c]herry-picked cases do not

determine the mine-run." G.Br. 27. However, it does not point to any cases that Mr. Leach failed to cite. *Id.* Nor does it argue that the cases he cited show that his case was outside the mine-run. *Id.* It largely fails to engage with the cases he cited. Nor does it explain how to determine the mine-run if not to look at cases involving similar charges. *Id.* Elsewhere in its brief, the government cites a case holding that "[c]omparing and contrasting a defendant's particular crime to its 'heartland' prototype is *always* relevant." *United States v. Vega-Santiago*, 519 F.3d 1, 6 (1st Cir. 2008) (en banc); *see* G.Br. 22. The cases Mr. Leach cited, as well as the fact that the government asked for a sentence near the low end of the guidelines range, indicate that this is a mine-run case.

The government concedes that there was no research related to sexual post-traumatic stress disorder in the record. G.Br. 26. However, its argument that the court was not focused on this research misreads the court's discussion of sexually-based harm. The court's explanation of the first factor was rooted in extra-record research and information. Add. 16-18. The court discussed what researchers have recently learned about "sexually based trauma" and Jane Doe A's statement. *Id.* It concluded that "[b]ased on these words of Ms. Doe and *what we know about post-traumatic*

13

*stress disorder*, I do not believe that the guidelines adequately take into account the nature and circumstances of the harm done by the offense." *Id.* (emphasis added). This information about post-traumatic stress disorder was not part of the record. The court's conclusion that this factor was not adequately considered by the guidelines was unsupported by the record and cannot justify the upward variance. *See* Br. 24; *United States v. Alvarez-Núñez*, 828 F.3d 52, 58 (1st Cir. 2016) ("Like a house built upon a porous foundation, a sentence built upon a rationale that is unsupported by the record cannot stand.").

The government states that Mr. Leach only cited one case involving "sexual extortion." G.Br. 26-27. The court did not upwardly vary based on concerns about "sexual extortion," but rather concerns about sexually-based trauma generally. Add. 16-18. Mr. Leach cited cyberstalking cases that involved sexually-based harm. *See* Br. 24. The government does not cite the single "sexual extortion" case, G.Br. 27, but it is likely *United States v. Ackell*, 907 F.3d 67 (1st Cir. 2018). *See also* Br. 22-28, 31-32. For years, Mr. Ackell manipulated a young woman he met online when he was 40 and she was 16. *Ackell*, 907 F.3d at 70. He forced her to enter a dominant-submissive relationship in which he was her "owner" and she was his

14

"slave," and he forced her to send him sexually explicit photos. *Id.* When she tried to stop the relationship, he threatened to send the photos to her family. *Id.* After trial Mr. Ackell's Guidelines were 33-41 months, and he received a sentence of 33 months. Br. 22. Although *Ackell* involves aggravating factors not present in Mr. Leach's case, it is a mine-run cyberstalking case. *See Br.* 22-28, 31-32. So is Mr. Leach's case. *Id.*

In connection with the court's second factor—duration of the conduct—the government says that Mr. Leach has cherry-picked cases. G.Br. 27. This assertion is unsupported. The government does not cite any cases that Mr. Leach failed to cite. Nor does it cite any cases that indicate that the length of the conduct in this case was outside the mine-run.

The government recites Mr. Leach's argument that the third factor— "power dynamics"—is an "inextricable part of the crime of cyberstalking and threatening." G.Br. 28 (quoting Br. 27). It does not argue to the contrary. *Id.* Indeed, its sentencing memorandum asserted that cyberstalking "is about power and control." JA 98. Instead, it notes that the court found that power dynamics "were present in this case to an 'outrageous' degree." *Id.* (quoting Add. 19). The use of the adjective "outrageous" is not enough to justify an above-guidelines sentence. The

15

court gave no explanation of what makes this case more outrageous than a mine-run case. As this Court has explained, cyberstalking is "an ugly crime." *United States v. Cardozo*, 68 F.4th 725, 730 (1st Cir. 2023). Mr. Leach detailed cases that received guidelines and above-guidelines sentences. Br. 22-35. These cases involve abusive power dynamics and could arguably be described as "outrageous." When Mr. Leach's case is compared with other cyberstalking cases, it is clear that his conduct was within the mine-run with respect to power dynamics. *See id.*

Mr. Leach argued that his use of the internet cannot justify an above-guidelines sentence because it is an inherent part of cyberstalking. Br. 27-28. The government responded that "the court's concern was that Leach used 'multiple anonymous social medial accounts' to make it more difficult for the victims to 'identify[] their attacker and bring[] him to justice.'" G.Br. 28. Even the anonymous use of social media does not justify an imposition of an above-guidelines sentence here. Br. 27-28. Some of the cases Mr. Leach cited involved anonymous internet usage. *Id.* Where those cases received above-guidelines sentence, they involved aggravating factors not present in Mr. Leach's case. *Id.*; *see United States v. Sayer,* 748 F.3d 425, 428-29 (detailing four-plus year campaign of internet-based stalking that

16

included posting fake ads purporting to be from victim soliciting sex);
*United States v. Cain,* 779 F. App'x 6, *7-*8 (1st Cir. 2019) (unpublished)
(stalking campaign included filing frequent anonymous complaints against
victim on her employer's website).

Mr. Leach argued that concern about the difficulty of tracing
anonymous cyber-predators was not case-specific because he was not
difficult to trace. Br. 28. The government points to three factors to counter
this argument. First, Jane Doe A went to the FBI in January 2021, but Mr.
Leach was not arrested until April 2021. G.Br. 28-29. The complaint reveals
that Jane Doe A identified Mr. Leach as her stalker in January when she
reported the offense.[5] JA 25-27. Second, the government argues that "Jane
Doe A and the government both said that the anonymous accounts made
[Mr.] Leach harder to trace. G.Br. 28-29 (citing JA 115, 117-18). The pages
the government cites include Jane Doe A stating that Mr. Leach's use of
multiple social media accounts made him hard to block and made her more
afraid. JA 115, 117-18. They do not contain representations from her or the
government that his anonymity made him hard to trace. *Id.* Third, the

---

[5] Jane Doe A used a selfie that Mr. Leach sent her in April 2020 to identify
him using a reverse image search. JA 24-26.

government asserts that the FBI was able to identify Mr. Leach "because he slipped up and compromised his anonymity. G.Br.28-29. This position means interpreting Mr. Leach's decision to send Jane Doe A a selfie as a "slip" that compromised his identity. It can also be viewed as a signal that he was not as concerned with anonymity as the government suggests.

The government says it is irrelevant that it sought a sentence near the low end of the guidelines range. G.Br. 29-30. As explained above, it is true that the court does not need to defer to the parties' view of the case. *See supra* Argument I.B. However, the government's request for such a sentence and its willingness to enter into a plea agreement that let Mr. Leach ask for a below-guidelines sentence, indicates that this was a mine-run case. *Cf. Rivera-Berríos*, 968 F.3d at 135. The government prosecutes cyberstalking offenses and is in a position to know which cases are in the mine-run and which are extraordinary and deserve an above-guidelines sentence. The government's sentencing recommendation suggests that Mr. Leach's case was within the mine-run and that the court did not sufficiently explain its upward departure.

Mr. Leach noted that the district court never renounced its mistaken assumption that he had "thousands of pictures." Br. 26-27. The government

concedes that Mr. Leach did not have thousands of photos. G.Br. 29. It

argues that it is not fair to conclude that "the court's misimpression"

affected its sentencing decision because it did not mention the photos in its

explanation for the variance. *Id.* Though the court did not reference the

number of pictures in its summary, it discussed it during the sentence

hearing. JA 133-136. The government corrected the court, but the court

never explicitly acknowledged that this information was incorrect. It is fair

to assume that this overstated quantity of photos was part of the court's

sentencing calculus.

### D.   The sentence is substantively unreasonable (Reply to G.Br. 30-32).

The government argues that the sentence was substantively

reasonable because "the court identified several aggravating factors that

the guideline calculation did not adequately address." G.Br. 30. As Mr.

Leach explained, the factors the court cited were adequately addressed by

the guidelines, not supported by the record, and/or not particular to Mr.

Leach. *See* Br. 19-36; *supra* Argument I.C.

The government casts Mr. Leach's claim of substantive

unreasonableness as a disparity argument. G.Br. 30-31. It argues that

disparity arguments must compare apples to apples. *Id.* Mr. Leach is not raising a disparity claim. He cites other cases to show that this upwardly variant sentence was not a defensible result. Br. 31-35. Even if these cases do not provide a baseline for reasonableness, they inform whether Mr. Leach's case was outside the mine-run. Br. 31-32. The government says the cases Mr. Leach cites are distinguishable from his case. G.Br. 31. However, it discusses only some aspects of one of the cases Mr. Leach cited. *Id.*

The government's efforts to show that *Ackell* involved less culpable conduct are unsuccessful. *Id.* When he was over 40, Mr. Ackell met his 16-year-old victim online. *Ackell*, 907 F.3d at 70. He told her he would send her money if she sent him partially clothed photos. *Id.* She sent the pictures, but he never sent the money. *Id.* About five months later, when the victim was 17, Mr. Ackell asked her to enter a "dominant-submissive" relationship. *Id.* She agreed, and he began to call her "slave," to insist he call her "owner," and to demand that she send sexually explicit photos. When she tried to end their relationship, he told her that if she stopped sending photos he would send the photos he had to her family. *Id.* Mr. Ackell was indicted three years after the conduct began. *Id.* After trial Mr.

Ackell's Guidelines were 33-41 months, and he received a sentence of 33 months. Br. 22.

Mr. Ackell's conduct was similar to Mr. Leach's in many ways. The government argues that Mr. Leach's case deserved an above-guidelines sentence because he extorted "live sex acts" instead of photos. G.Br. 31. This distinction cannot carry the weight the government assigns it. Initially, Mr. Ackell did demand that the victim participate in "live sex acts," albeit not recorded ones. *Ackell*, 907 F.3d at 70. He demanded that she communicate with him and that she do so within the framework of an "owner/slave" relationship. *Id.* The government elides the ways in which Mr. Ackell's case was more egregious than Mr. Leach's, most notably the fact that Mr. Ackell engaged in abusive sexual contact with a minor, even if the cyberstalking did not begin until she turned 18. *See* G.Br. 31, n.8. The government notes that Mr. Ackell was a single parent, a mitigating factor not present in Mr. Leach's case. *Id.* It does not discuss the mitigating factors applicable to Mr. Leach but not Mr. Ackell. Mr. Leach was a young man with profoundly low self-esteem who promptly took responsibility for his actions, pled guilty, and was actively engaged in therapy. *See* SA 24-56.

Like *Ackell*, the other cases Mr. Leach cited that the government does
not discuss do not show that Mr. Leach's sentence was within the
"universe of reasonable sentencing outcomes." Br. 22-35. These cases show
that Mr. Leach's case was within the mine-run and that his above-
guidelines sentence was outside the universe of reasonable outcomes.

**II.  The district court erred in imposing a condition of supervised
release that prohibits Mr. Leach from working and volunteering in
settings that might cause direct contact with minors without prior
approval. The record does not support this overly broad condition
(Reply to G.Br. 32-40).**

**A.     Standard of review**

The government argues that this claim should be reviewed for plain
error. G.Br. 32-34. It notes that Mr. Leach did not object to this condition in
the PSR, in his sentencing memorandum, or at the first sentencing hearing.
G.Br. 33. Mr. Leach objected to it at the second sentencing hearing. Add. 4-
7. The government does not cite any cases for the proposition that Mr.
Leach was required to raise this objection at those earlier stages. He
objected to the condition before it was imposed and at a time that the
district court could address it. This is sufficient to preserve the objection.

The government argues that Mr. Leach's objection did not preserve
an objection to the sufficiency of the explanation or that the record

reference to his contact with a minor was insufficient to support the condition. G.Br. 32-35. It argues that Mr. Leach "withdrew" his objection by proposing a narrower condition. G.Br. 32-35. These assertions are incorrect. At the second sentencing hearing, counsel stated "I think this is a condition that comes up in cases like this but I just wanted to raise it because *the specifics of this case don't deal with minors*, so I would just ask to strike that…." Add. 5 (emphasis added). When the government raised the reference in the complaint to an online conversation with a minor, counsel suggested that the condition could be "more specific to online contact" because "[w]ith all minors seems overly restrictive *given the type of behavior in this case*."[6] Add. 6 (emphasis added). When the court asked whether there was any reason for particular concern in this case, counsel said no. Add. 7. She said that she did not have "anything else to add. I think that's just—that was my suggestion *based on the type of criminal behavior in this*

---

[6] The government notes that Mr. Leach has not argued on appeal that the condition should be limited to online contact with minors. G.Br. 35-36. Counsel offered this possibility below, but it is not ripe for appeal. What is before this Court is the condition that the district court imposed, not a hypothetical one counsel asked it to explore. The court imposed an overly broad and unduly restrictive condition. Whether an appropriate narrower condition could be imposed would be a question for the district court if a resentencing were ordered.

*case*." *Id.* (emphasis added). Counsel consistently argued that the broad condition was not justified by Mr. Leach's conduct as established in the record. This objection informed the court that counsel believed the record did not support the broad condition and that the court had not sufficiently explained its imposition. However, even if this case is reviewed under a plain-error standard, Mr. Leach can prevail. *See* Br. 38, 41-42.

**B.    The court imposed this overly broad condition without sufficient explanation or justification. The record did not support its imposition.**

The government recognizes that conditions of supervised release must be supported by the record. G.Br. 36. However, it argues that the court imposed the condition because Mr. Leach's "contact with a minor in relation to his predatory online activities raised enough of a public safety concern to justify the relatively weak constraint on liberty that the condition represented." G.Br. 37 This argument is flawed. First, this condition is not a weak constraint. Employment is a major life activity, and many jobs involve contact with children. Mr. Leach's employment prospects, which will already be circumscribed by his felony conviction, should be not unnecessarily limited by this broad condition.  Second, Mr. Leach's contact with a minor was not "related to" his "predatory online

activities" in a way that justifies this condition. Mr. Leach used one of his Instagram accounts to communicate with another user who purported to be a minor. JA 37. He stated that his name was Gary and he was a masters' student at a "top 5 university." *Id*. The record does not reveal that he said anything inappropriate to this user; that he solicited photos, video, or other sexual content from this user; or that he attempted to initiate a video call with her or to send her unsolicited photos. It was an incidental and nonsexual conversation.

The government counters that Mr. Leach has a "consistent pattern" of "behaving in a predatory manner" on Instagram. G.Br. 38. Even accepting that description, Mr. Leach has no such pattern connected to minors. The government has not pointed to a single instance in which he had an inappropriate interaction with a minor—on Instagram or elsewhere. The forensic psychiatric evaluation Mr. Leach submitted indicates that he does not meet the criteria for any paraphilic disorders. SA 41. The innocuous nature of his conversation with a purported minor is all the more stark when compared with the pattern the government describes. The government argues that it is plausible to infer that this conversation was innocuous only because of "timing" or "lack of opportunity." G.Br. 38-39.

This argument was not made below, and there is nothing in the record from which the court could have made such an inference. Add. 4-9. Further, this inference is nonsensical. Instagram users can send messages to one another at any time, and there are many Instagram users of all ages. Mr. Leach had a single conversation with someone purporting to be a minor. This conversation was not inappropriate and there is no record of him seeking contact with minors. This conversation does not support the imposition of a broad condition prohibiting him from taking jobs or volunteer opportunities that involve contact with minors without approval from Probation.

The government asserts that this condition is not "overly burdensome" because Mr. Leach can seek permission from Probation and has not identified any circumstances that make this condition "particularly onerous." G.Br. 39. Mr. Leach is not required to make such a showing.

> A special condition of release may only be imposed if the sentencing court determines that the condition:
> (1) is reasonably related to the factors set forth in [18 U.S.C. §]3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in [18 U.S.C. §]3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. [§ ]994(a).

*United States v. Hinkel*, 837 F.3d 111, 125 (1st Cir. 2016); *see also United States v. Fey*, 834 F.3d 1, 3 (1st Cir. 2016). This condition is not reasonably related to the §3553(a) factors and it is a greater deprivation of liberty than is reasonably necessary. The fact that Probation may allow him to accept such an opportunity "does not immunize the ban from an inquiry that evaluates the justification for the ban in the first instance." *United States v. Ramos*, 763 F.3d 45, 61 (1st Cir. 2014); *see also Hinkel*, 837 F.3d at 126; Br. 38-39.

This condition is not related to the charged offense, which involved other adults. Aside from a single, truthful, non-explicit conversation with a purported 15-year-old, there are no allegations that Mr. Leach interacted with minors. Mr. Leach has never committed or been accused of a crime involving a minor. The court imposed this condition "knowing that if particular circumstances arise that Mr. Leach can get the approval of Probation or later seek a modification with me." Add. 7. This statement is not a sufficient explanation, and it runs counter to the requirement that conditions be case-specific and narrowly tailored.

The imposition of this condition was so lacking in basis that it must be vacated even under plain-error review. *See Fey*, 834 F.3d at 3-5. Given

27

the lack of record support for the condition and the absence of an explanation, the error was clear and obvious. *See id.* This Court has previously held that similar circumstances satisfied the third and fourth prongs of plain-error review. *Id.* at 5-6. This unduly-restrictive condition was not grounded in the facts and circumstances of this case, and it must be vacated under any standard of review.

## CONCLUSION

For the foregoing reasons, as well as those contained in his opening brief, Mr. Leach asks this Court to vacate his sentence and remand for resentencing.

Respectfully Submitted,

*/s/ Christine DeMaso*

Christine DeMaso
Assistant Federal Public Defender
51 Sleeper St.—5th Floor
Boston, MA 02210
(617) 223-8061
Identification No. 1168061

Dated: September 25, 2023

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

Certificate of Compliance With Type-Volume Limitation, Typeface
Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

> this brief contains 5940 words, excluding the parts of the brief
> exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
because:

> this brief has been prepared in a proportionally spaced typeface
> using Microsoft Word and 14-point Book Antiqua font.

*/s/ Christine DeMaso*
Christine DeMaso

Attorney for Gary E. Leach

Dated: September 25, 2023

29

## CERTIFICATE OF SERVICE

I, Christine DeMaso, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants, including all counsel of record, specifically, Karen L. Eisenstadt, as identified on the Notice of Electronic Filing on September 25, 2023.

*/s/ Christine DeMaso*
Christine DeMaso